No. 16-20570

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

FRANCIS YUVINI GUERRA PLEITEZ, also known as Colochin, also known as
Flaco,
Defendant-Appellant.

Appeal from the United States District Court for
the Southern District of Texas
_____

BRIEF FOR APPELLANT

_____

EDWARD MALLETT
Mallett | Saper | Berg, L.L.P.
4306 Yoakum Blvd., Suite 400
Houston, TX 77006
713-236-1900
edward@msblawyers.com

ATTORNEY FOR APPELLANT

# CERTIFICATE OF INTERESTED PERSONS

## United States v. FRANCIS YUVINI GUERRA PLEITEZ
## No. 16-20570

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

1. The Honorable David Hittner, United States District Judge, Houston Division, Southern District of Texas, on the underlying substantive conviction.

2. Francis Yuvini Guerra Pleitez, also known as Colochin, also known as Flaco, Defendant-Appellant.

3. United States of America, Plaintiff-Appellee.

4. Mr. Kenneth Magidson, United States Attorney, Ms. Renata A. Gowie, Assistant United States Attorney for the Southern District of Texas, counsel for appellee.

5. Edward Mallett, counsel for appellant on appeal (CJA).

6. Gus A. Saper, counsel for appellant in the district court (CJA).

These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

/s/ Edward Mallett
EDWARD MALLETT

i

## STATEMENT RESPECTING ORAL ARGUMENT

Mr. Pleitez requests oral argument.

The district court entered a final judgment, Mr. Pleitez gave Notice of Appeal and his court-appointed lawyer withdrew. Then the District Court, while Mr. Pleitez did not have a lawyer, received an Addendum to the PSR and substantially increased the restitution as reflected in an Amended Judgment. Several days later, new counsel was appointed for this appeal.

Oral argument may assist the Court of Appeals' decision whether to remand for resentencing.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS .........................................................i

STATEMENT RESPECTING ORAL ARGUMENT ............................................. ii

TABLE OF CONTENTS........................................................................... iii

TABLE OF CITATIONS ........................................................................iv

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUE...............................................................2

STATEMENT OF THE CASE.................................................................3

SUMMARY OF THE ARGUMENT .....................................................15

ARGUMENT .........................................................................................17

ISSUE RESTATED: Did the District Court violate Mr. Pleitez's Fifth
and Sixth Amendment rights to due process and assistance of counsel
because the District Court received, considered and acted on the
Fourth Addendum to the PSR and entered the Amended Judgment
which substantially increased the restitution order when Mr. Pleitez
did not have a lawyer, or any notice of the proceedings ................................17

CONCLUSION......................................................................................23

CERTIFICATE OF SERVICE ..............................................................24

CERTIFICATE OF COMPLIANCE......................................................25

# TABLE OF CITATIONS

## CASES

*Boykin v. Alabama,*
    89 S.Ct. 1709 (1969) ...........................................................................18

*Browning-Ferris v. Kelco Disposal,*
    109 S.Ct. 2909 (1989) .........................................................................19

*Gideon v. Wainwright,*
    83 S.Ct. 792 (1963) .............................................................................18

*Kitchens v. Smith*,
    91 S.Ct. 1089 (1971) ...........................................................................18

*Pasquantino v. United States*,
    125 S.Ct. 1766 (2005) .........................................................................19

*Paroline v. United States*,
    134 S.Ct. 1710 (2014) ....................................................................18, 19

*United States v. Bajakajian,*
    118 S.Ct. 2028 (1998) .........................................................................19

*United States v. Clark,*
    816 F.3d 350 (5th Cir. 2016) ..........................................................17, 19

*United States v. Gonzalez-Lopez,*
    126 S.Ct. 2557 (2006) .........................................................................17

*United States v. Lampton*,
    158 F. 3d 251 (5th Cir. 1998).............................................................17

*United States v. Moree*,
    928 F.2d 654 (5th Cir. 1991)..............................................................19

TABLE OF CITATIONS - (Cont'd)

Page

STATUTES AND RULES

8 U.S.C. §1324(a)(1)(A)(v)(I) ........................................................................3

8 U.S.C. §1324(a)(1)(A)(ii) ...........................................................................3

8 U.S.C. §1324(a)(1)(A)(iii) ..........................................................................3

8 U.S.C. §1324(a)(1)(B)(i) .............................................................................3

18 U.S.C. §1591(a)(1)......................................................................................3

18 U.S.C. §1591(a)(2)......................................................................................3

18 U.S.C. §1591(b)(2).....................................................................................3

18 U.S.C. §1593 .............................................................................................13

18 U.S.C. §1593(b)(3)................................................................................6, 22

18 U.S.C. §1594(c) ..........................................................................................3

18 U.S.C. §2251 ...............................................................................................6

18 U.S.C. §2259 .............................................................................................19

18 U.S.C. §3553(a) ...................................................................................11, 12

18 U.S.C. §3553(c) .........................................................................................15

18 U.S.C. §3663(a)(2)......................................................................................6

18 U.S.C. §3664(d)(5)..........................................................................16, 20, 21

18 U.S.C. §3742 ..................................................................................4

28 U.S.C. §1291 ...............................................................................1, 4

28 U.S.C. §2255 ..................................................................................4

29 U.S.C. §201 ...................................................................................6

Fed. R. App. Pro. 4(b) .........................................................................1

## SENTENCING GUIDELINES

U.S.S.G. §5K1.1 ..........................................................................*passim*

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend V ....................................................................... *passim*

U.S. Const. amend VI ...................................................................... *passim*

## STATEMENT OF JURISDICTION

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291, as this case is an appeal from a final judgment of conviction and sentence entered by the United States District Court for the Southern District of Texas, Houston Division.  Notice of Appeal from the Amended Judgment in a Criminal Case was timely filed in accordance with Fed. R. App. Pro. 4(b).

## STATEMENT OF THE ISSUE

ISSUE:      Did the District Court violate Mr. Pleitez's Fifth and Sixth Amendment rights to due process and assistance of counsel because the District Court received, considered and acted on the Fourth Addendum to the PSR and entered the Amended Judgment which substantially increased the restitution order when Mr. Pleitez did not have a lawyer, or any notice of the proceedings.

## STATEMENT OF THE CASE

On February 3, 2015, the Grand Jury in Houston, Texas indicted the Defendant-Appellant, Francisco Guerra Yuvinni Pleitez ("Mr. Pleitez"), (superseding indictment) in three counts: Count 1s: Conspiracy to Engage in Sex Trafficking, in violation of 18 U.S.C. §1591(a)(1), (a)(2) and 18 U.S.C. §1594(c); Count 2s: Conspiracy to Engage in Sex Trafficking, in violation of 18 U.S.C. §1591(a)(1), (a)(2) and (b)(2); and Count 4s: Conspiracy to Transport and Harbor Illegal Aliens, in violation of 8 U.S.C. §1324(a)(1)(A)(v)(I), (a)(1)(A)(ii), (a)(1)(A)(iii), and (a)(1)(B)(i). ROA. 78-91.[1]   The case was assigned to the Honorable David Hittner, United States District Judge.

Pleitez entered a plea of guilty to Count One (conspiracy to commit sex trafficking) on August 17, 2016, pursuant to a Plea Agreement. ROA. 9. He was represented by appointed counsel at the re-arraignment. ROA. 118.

The Plea Agreement provided for a guilty plea to Count One of the Indictment. ROA. 122-34. The Defendant stipulated to the facts stated in the Plea Agreement:

> "15.  During the course of a conspiracy from at least in or about late 2010, the defendant, FRANCISCO GUERRA YUVINNI PLEITEZ, in conjunction with his coconspirators

---

[1] The record in this appeal is indicated "ROA. [page number]."

3

> Hugo Alexander Melendez-Gonzalez, Jose William Quintanilla, Adelio de Jesus Batres, Mariano Quintanilla-Campos and FNU LNU, aka "Chapin,"employed women via vehicles to meet men for the purpose of prostitution in the Houston, Texas area. GUERRA knew that most, if not all, of the women and girls employed were aliens illegally within the United States."

ROA. 129.

The Plea Agreement included Mr. Pleitez's agreement to "fully cooperate" by providing:

> "…all information relating to any criminal activity known to the Defendant, including human trafficking…"

and a duty to testify as a witness:

> "…when called upon to do so by the United States."

ROA. 124.

The Plea Agreement also held out the possibility the government might file a motion for a downward departure under U.S.S.G. §5K1.1 if the government decided the cooperation amount to substantial assistance.

The Plea Agreement also included a "Waiver of Appeal and Collateral Review," under 28 U.S.C. §1291 and 18 U.S.C. §3742; and 28 U.S.C. §2255. ROA. 125. The waiver paragraph stated that if Mr. Pleitez files a Notice of Appeal, "…following the imposition of the sentence…" the United States "…will assert its rights under their agreement and seek specific performance of these waivers."

4

The Plea Agreement expressly allows Mr. Pleitez to raise a claim of ineffective assistance of counsel. ROA. 125.

The Report of a Presentence Investigation Report (PSR) was timely disclosed, and the defense filed Objections to the PSR on June 8, 2016. ROA.392-97. The final PSR was filed June 24, 2016. ROA. 398-439, along with a confidential Sentencing Recommendation (ROA. 527, this is sealed and not disclosed to counsel), and a Sealed Addendum.  ROA. 440-44. A Second Sealed Addendum was filed on August 17, 2016. ROA. 454. A Third Addendum to the PSI was filed on August 24, 2016, and was discussed at sentencing. ROA. 486-87.

The transcript of the sentencing hearing shows the government filed a "5K motion." ROA. 362-364. The 5K motion was incorporated into the government's Objections to Presentence Report. ROA. 445. The Court determined the sentencing range was 210-262 months without a downward departure under §5K1.1. Then the Court referred to, and incorporated, Victim Impact Statements, which were adopted. ROA. 364. The Court overruled all defense objections to the PSI that might affect the "combined adjusted offense level." ROA. 372-76. The District Court acknowledged, as apparently did the United States Probation Officer ("USPO") in the second sealed sentence recommendation, that Mr. Pleitez was not a "leader/organizer." This had no effect on the combined adjusted offense level.

ROA. 367.

The defense orally objected to the belated, Spanish language victim impact letters, which included the claims that became the basis of the restitution proposed in the Second and Third Addendums. ROA. 369-70.

The sentencing focused on the defense objections to the restitution requests in letters provided by victims L.T.S. and I.H. The USPO argued from case law that foreign citizens illegally in the United Sates are victims under the Victim and Witness Protection Act (VWPA), 18 U.S.C. §3663(a)(2); the Sexual Exploitation of Children Act (SECA), 18 U.S.C. §2251 and the Trafficking Victims Protection Act (TVPA), 18 U.S.C. §1593(b)(3). The USPO maintained that L.T.S. and I.H. were entitled to restitution, inter alia, for counseling/therapy expenses and based on Mr. Pleitez's income from their labor. The Third Addendum proposed the victims are entitled to recover:

> "'the **greater of** the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 et seq.)'" (FLSA).

ROA. 487.

This indicates the victims may receive restitution for the amount of money the conspiracy defendants received from the victim services as prostitutes, or for the value of their labor for the defendants, or the amount guaranteed for legitimate

6

employment in the United States, under the FLSA. The victim prostitutes estimated

and made claims for payment from the conspirators.

In the Third Addendum, the USPO simply used the amount requested, which

is not in the statute, and explained his decision as follows:

> "The probation officer maintains that the gross income or value
> generated by the victims' services over the course of the conspiracy is
> substantial, with initial estimates by the probation officer exceeding
> $120,000 for a single victim. However, the probation officer concedes
> these initial calculations into the value of the victims' services are
> speculative. As such, the probation officer recommends that the lower
> figures actually submitted by the victims L.T.S. and I.H. be utilized
> for determining restitution, rather than unduly prolong the sentencing
> process in this case."

ROA. 487.

These "lower figures" submitted by L.T.S. and I.H. were reported earlier in

their Victim Impact Statements, summarized as Additional Information in the First

Addendum, $71,120 to L.T.S. and $18,380 to I.H., and $490 to M.G.C. ROA. 454.

This appears to include their estimates of what they already paid.

At sentencing, the defense specifically objected to restitution to victims that

took into consideration an estimate of gross income to the defendants, or

hypothetical income under the FLSA.  He said that the victims had illegally entered

the United States and could not legally work in the United States, and should not

get paid again for their illegal work. The Court agreed this was an "interesting

point." ROA. 371. He said he would not defer his decision, then changed his mind.

The record shows the following:

> "THE COURT:      Well, you heard his objection; so, what's your position on it?

> MR. DAVIS:      Well, Judge, there are any number of illegal aliens here and they work here. They get paid.

> THE COURT:      As a matter of law.

> MR. DAVIS:      I don't know, Judge. I would have to - -

> THE COURT:      What's the probation department's position on that?

> PROBATION OFFICER:      Paragraph 162 of the PSR lays out some of the standards for determining this. They can get the greater of the value of the prostitution services or the amount they would have made under the Fair Labor Standards Act. So, if the Court wants to defer this for up to 90 days - -

> THE COURT:      No, I'm not going to defer it. What's your position? Because he's entitled to a ruling. Now, if he takes it up, so be it. If it comes back - - if I disagree - - but he needs this in the record. It's an interesting point. Paragraph 162?

> PROBATION OFFICER:      162.

> THE COURT:      …All right. Well, it also states medical services, physical, psychiatric, psychological care.

> MR. SAPER:      I have no objections to any of that, Your Honor.

> THE COURT:      Loss of income, attorneys' fees. What sort of attorneys' fees are we talking about?

> PROBATION OFFICER:      They haven't requested attorneys' fees; only

lost wages and future counseling expenses.

THE COURT:      What I am going to do: I will make a final judgment in this case. I am going to defer ruling on this defendant only relative to that restitution matter. Okay? So, it may or may not be granted. It's not going to affect the finality of the judgment on other grounds, but before we do it I will take the probation department's research. I already heard Mr. Saper's position. I will make a ruling. And, therefore, for the record, if it ends up a that $90,110 - - He said he objects to LTS in the amount of $71,40 [sic] and to IH in the amount of $18,380.

How about MCG in the amount of $490?

MR. SAPER:      No objection.

THE COURT:      No objection to that.

So, I am going to withhold ruling. If you want to get anything in writing - - I don't think you need it. You have got it in the record. I will see what the probation department says. Bring it to my attention when this final judgment comes up and I will make the final ruling; and, if it's adverse to Mr. Saper, he's preserved that now for appellate purposes. Okay?

PROBATION OFFICER:      Yes, sir."

ROA. 371-73.

The subject of final restitution came up again:

"THE COURT:      All right. Aside from the objections that were granted and/or revisions made to the presentence report and also with the understanding that there may be some corrections or additions relative to an amount of restitution - - and I will address that at the end of the sentencing, because when I get to restitution - - It's at the very end of sentencing.

Just for the record, any remaining or other objections are overruled, and the presentence report and all addendums are hereby adopted by this court."

9

ROA. 376.

The government then made a specific recommendation of 188 months and explained:

> "MR. DAVIS:      Judge, as I said in my motion, this defendant, as Mr. Saper said, did cooperate. He met with us several times. He was willing to testify, and I think that impacted some of the others' decisions to go ahead and plead guilty. And I would recommend that the Court do a downward departure and I would recommend a sentence of 188 months."

ROA. 381.

There was considerable discussion of Mr. Pleitez's conduct as compared to his co-defendants. Mr. Pleitez stopped participating in the conspiracy and moved to Colorado before there were any criminal charges. ROA. 378. The judge asked about reports that Mr. Pleitez "…assaulted one of the girls under his supervision." ROA. 366. The government stated that he did. ROA. 366.

The Court granted the government's U.S.S.G. §5K1.1 motion that was incorporated in the government's Response to Defendant's Objections to PSR and Request for Sentencing Departure Pursuant to §5K1.1 of the Sentencing Guidelines. ROA. 445-49:

> "Because of the defendant's cooperation and assistance in this case, the Government requests the Court depart by three offense levels, for a total offense level of 34, criminal history category I, which yields a recommended sentence of 151-188 months." (emphasis in original).

10

ROA. 447-48.

The Court made findings on the facts and ruled on the 5K1.1 Motion, but only granted a two-level departure to Level 35. The Level 35 guidelines range is 168-210 months. Then the District Court gave the maximum under the new guideline range, which, coincidentally, was the bottom of the original 210-262 month guideline range calculated in the PSR. The Court said:

> "I do find that he was an average participant and that he assisted in transporting the women and the girls in the operation, the prostitution operation led by some of the other defendants. He collected proceeds and delivered the fees to Quintanilla or to Melendez-Gonzalez. The Defendant used threats of violence, actual violence and/or sexual assault to facilitate the perpetuation of the sex trafficking of the women and girls and to coercing them to engage in prostitution as part of the offense - - *as part of the o*ffense - - and, also, as discussed as relevant conduct to the whole operation.
>
> There is a motion for downward departure under 5K1.1 of the guidelines. The Court will grant a downward departure but not to the extent that the government recommends. He's now at a total offense level of 37, criminal history category of I. It's the request of the government that he go down to an offense level of 34 with a criminal history category of I. I will grant that, but I will move him down just two levels to a Level 35, criminal history category of I, and I will sentence within the guidelines.
>
> Now, the guidelines that I now find applicable are 35-1. I feel that a sentence within the guidelines is appropriate pursuant to 18, United States Code, Section 3553(a).
>
> It's the judgment of the Court the Defendant is hereby committed on

the custody of the Bureau of Prisons to be imprisoned in the federal penitentiary without parole for a term of 210 months."

ROA. 386-87.

At the end of pronouncing sentence, the Court again made reference to the restitution and offered to consider assistance from the parties before setting final restitution:

> "It is further ordered that the Defendant be jointly and severally liable with the other defendants in the case for the restitution amounts. There is no contest as to the restitution amount of $490. As to the other amounts, the $71,240 due to one of the victims and the amount of $18,380. I will wait to see the - - any statutory or case interpretation that I find, including assistance of any of the parties here, too, and the probation office."

ROA. 389.

The USPO's Third Addendum to the PSR was filed August 24, 2016. ROA. 486-87. The Judgment was also entered on August 24, 2016 (ROA. 257-63). This Judgment stated that the restitution award was $490, the amount requested by M.G.C., ROA. 271. The other Counts were dismissed after sentencing. ROA. 255.

The defense filed its Objection to the Third Sealed Addendum a day later, August 25, 2016 (ROA.492-94), but that was after the Third Addendum and the Court had already entered its Judgment. Mr. Saper, on Mr. Pleitez's behalf, filed the Notice of Appeal on August 26, 2016. ROA. 264.

12

On August 30, 2016, the District Court granted the Mr. Saper's Motion to Withdraw. ROA. 290. The District Court transmitted the case to the Court of Appeals, and terminated the case in the District Court on August 29, 2016. ROA. 265.

Therefore, after Mr. Saper withdrew on August 30, 2016, Mr. Pleitez did not have a lawyer. New counsel was appointed on September 9, 2016. ROA. 13.

On September 6, 2016 the United States Probation Office filed a Fourth Sealed Addendum to the Final Presentence Investigation Report that responded to Mr. Saper's Objections to the Third Addendum. ROA. 495-99. It was not served on Mr. Pleitez, who was jailed at the Joe Corley Detention Facility in Conroe, Texas. Also, Mr. Pleitez speaks only the Spanish language. That same day, the District Court Ordered entered an Order stating that Pleitez owed restitution of $76,400 to the "victim" identified by the initials "L.T.S.", and $36,900 to "I.H", pursuant to 18 U.S.C. §1593 and the provisions of the Plea Agreement in this case. ROA. 291.

On September 9, 2016, the District Court appointed the undersigned, Edward Mallett, as CJA counsel on appeal, ROA. 13, and on the same day, September 9, 2016, the District Court signed an Amended Final Judgment incorporating its September 6, 2016 Order and set the amount of restitution to

L.T.S. and I.H. ROA.  293-99.

On September 19, 2016, Pleitez, through newly appointed counsel, filed a Supplemental Notice of Appeal. ROA. 302.

## SUMMARY OF THE ARGUMENT

The Sixth Amendment guarantees assistance of counsel. Thus, lawyers must be appointed for indigent defendants. Mr. Pleitez has a right to a lawyer at every stage in the proceedings. His Constitutional rights were violated. A right to appeal based on denial of assistance of counsel was expressly preserved in his Plea Agreement.

When the Court granted Mr. Saper's Motion to Withdraw on August 29, 2016 Mr. Pleitez was left without counsel. Both the Fourth Addendum and the Order setting restitution were entered when he had no lawyer and no opportunity to respond to the Fourth Addendum. This is a violation of his Constitutional rights.

An Order of Restitution is a financial penalty. The statute, 18 U.S.C. §3553(c), allows a court to set a date up to 90 days after, the formal sentencing, to determine the amount of restitution. The district court did not "set a date." The related Statement of Reasons can be read as part of the Judgment and recites, under "Partial Restitution is ordered for these reason (18 U.S.C. §3553(c)):

> "The Court deferred ruling on the restitution to LTS and IH for a 90-day period."

ROA. 491.

The Court's intent to defer is obvious, but the Court did not set the date as provided by 18 U.S.C. §3664(d)(5).

15

The five-page Fourth Addendum replied to counsel's objection to the Third Addendum and explained the USPO's reasoning. ROA. 495-99. The Court's immediate entry of a Restitution Order based on explanations, opinions and conclusions in the Fourth Addendum gave the uncounseled Mr. Pleitez no opportunity to be heard. This violated the Constitution and laws of the United States.

Because the district court violated the fundamental rights to assistance of counsel guaranteed by the Fifth Amendment and Sixth Amendment to the Constitution of the United States of America, the defendant's Fifth Amendment right to due process of law and his right to participate at a critical stage in the proceedings, the sentence should set aside and the case remanded.

## ARGUMENT

ISSUE RESTATED:      Did the District Court violate Mr. Pleitez's Fifth and Sixth Amendment rights to due process and assistance of counsel because the District Court received, considered and acted on the Fourth Addendum to the PSR and entered the Amended Judgment which substantially increased the restitution order when Mr. Pleitez did not have a lawyer, or any notice of the proceedings.

A.    Standard of Review.

Denial of the Sixth Amendment right to counsel at a critical stage in the proceedings is fundamental error and calls for automatic reversal. See *United States v. Gonzalez-Lopez*, 126 S.Ct. 2557 (2006) (no showing of harm required after denial of counsel of choice).

A claim that a defendant was denied due process rights to be present at a resentencing hearing and have effective assistance of counsel and the opportunity to be heard is subject to de novo review. *United States v. Lampton*, 158 F.3d 251, 255 (5th Cir. 1998); and *United States v. Clark*, 816 F.3d 350 (5th Cir. 2016).

B.    Argument and Authorities.

The Sixth Amendment to the United States Constitution provides:

> "In all criminal proceedings, the accused shall enjoy the right to a …public trial…and to have the assistance of counsel for his defence."

(U.S. Const. amend VI).

The Plea Agreement provides:

> "…Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal…" ROA. 125.

Here, Mr. Pleitez was not just denied assistance of counsel; he did not have a lawyer at a critical stage.

An indigent defendant has a right to an attorney. *Gideon v. Wainwright*, 83 S.Ct. 792 (1963). This right is not dependent on a request for counsel. *Kitchens v. Smith,* 91 S.Ct. 1089 (1971). The Defendant's judicially recognized indigency in the district court and on appeal is sufficient to show he was indigent when the Fourth Addendum and the Order on Restitution were filed.

A waiver of Sixth Amendment rights cannot be presumed from a silent record. *Boykin v. Alabama*, 89 S.Ct. 1709 (1969). Here it is evident that Mr. Pleitez never waived his right to counsel anyway.

Restitution is part of the penalty: It is referenced in the Amended Judgment under "Criminal Monetary Penalties" (ROA. 297-98) and again in the Statement of Reason. ROA. 503. In *Paroline v. United States*, 134 S.Ct. 1710 (2014), the Supreme Court explained, at 1726, about restitution to the victims of sex offenses:

> "But while restitution under §2259 is paid to a victim, it is imposed by the Government 'at the culmination of a criminal proceeding and

18

requires conviction of an underlying' crime, *United States v. Bajakajian*, 524 U.S. 321, 328, 118 S.Ct. 2028, 141 L.Ed. 2d 314 (1998). Thus, despite the differences between restitution and a traditional fine, restitution still implicates 'the prosecutorial powers of government,' *Browning-Ferris, supra*, at 275 109 S.C.t 2909. The primary goal of restitution is remedial or compensatory, cf. *Bajakajian, supra*, at 329, 118 S.Ct. 2028, but it also serves punitive purposes, see *Pasquantino v. United States*, 544 U.S. 349, 365, 125 S.Ct. 1766, 161 L.Ed.2d 619 (2005). (Additional citations omitted).

A defendant has a right to be present if an original sentence is increased by the district court. *United States v. Moree*, 928 F.2d 654 (5th Cir. 1991) (sentence reversed when defendant not present for new sentence that was not a "reduction in sentence."). *Moree* was recently cited with approval in *United States v. Clark*, 816 F.3d 350 (5th Cir. 2016) (affirmed; judgment entered on remand after specific counts reversed; new judgment not more onerous than original sentence).

Here, the amount of restitution was vigorously contested and the increased penalty made the punishment "more onerous." The Order of Restitution and Amendment Final Judgment raised Mr. Pleitez's restitution from a total of $490 to $113,790.00. The added amount was substantial.

The Fourth Addendum, on its face, stated that it gave the Court "Additional Information." ROA. 495. The Fourth Addendum recognized Mr. Pleitez's Objections to the PSR, the Revised PSR and the Third Addendum. ROA. 496. It is true, as the Fourth Addendum asserts, that the Plea Agreement section on

19

restitution obligates the defendant to pay "full restitution," which "the court will determine," and that he waived the right to challenge the restitution amount on direct appeal. ROA. 131. However, Mr. Pleitez did not waive his right to challenge it in the District Court, the USPO's recommended restitution award in the District Court, or to appeal the denial of assistance of counsel.

The defense – because Mr. Pleitez had no lawyer – was denied the opportunity to object to the USPO's briefing at ROA. 497. The USPO cites cases where the Fifth Circuit found no Sixth Amendment violation when a judge – not the jury – decided restitution owed to victims. The USPO obviously confused the Sixth Amendment right to counsel with the rule that there is no "right to jury trial" on restitution amounts, when it string-cited these cases. ROA. 497. These cases do not apply to claims of denial of representation.

The USPO's next argument in the Fourth Addendum was that because Mr. Pleitez's restitution duty was decided August 17, 2016 at a hearing that he did not attend, it could be reversed only by a defense motion under 18 U.S.C. §3664(d)(5). How would Mr. Pleitez know he should file a motion objecting to what the USPO recommends when he had no lawyer and he did not even receive the Fourth Addendum, and had already given Notice of Appeal in all other ways, and divested the Court of jurisdiction?

In fact, that statute is in Mr. Pleitez's favor. 18 U.S.C. §3664(d)(5) requires that if victim losses are not determined 10 days before sentencing, then "…the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." This is the statue that was violated when the District Court set the final restitution without notice to the defendant. The District Court did not set a final date as provided by law. Instead, it decided this contested issue on materials submitted only by the USPO, the same day it rendered its decision; a day that Mr. Pleitez had no lawyer.

The further arguments of the USPO explain that the only contested issue is "lost wages." ROA. 498. The defense never waived and Mr. Pleitez could not, without counsel, argue, that basing restitution, in-part, on the value of gross income to the conspirators who arranged for "victims" to provide prostitution services while illegally in the United States, based only on self-serving requests and statements of the prostitutes, unreasonably inflated the restitution based on the justification explained in the Fourth Addendum.

The statute cited by the USPO, 18 U.S.C. §1593(b)(3), provides alternate means of setting "full restitution:" Restitution may be for the value to the defendant of the victim's services or the value of the victim's labor. Evidence available to rebut the Fourth Addendum will show the prostitutes received half

21

(50%) of the gross receipts. Thus, the gross income to the defendants included the 50% paid to the prostitutes for their labor. The USPO's calculation allows the prostitutes to keep their pay and then receive twice that amount as "restitution." That would be triple compensation.

On re-hearing the Court well might reconsider and base restitution on the value of the prostitutes' labor to the defendants, cutting this part of the restitution by half. Obviously the USPO was concerned the defense objections to the Third Addendum might carry weight. Mr. Pleitez did not have an equal opportunity to persuade the District Court. In in the end the Court received only the USPO's theory on how to resolve what the Court acknowledged was "…an interesting point." ROA. 371-72. Thus, Mr. Pleitez has also shown harm from the denial of a fundamentally Constitutional right to assistance of counsel at a critical stage in his case.

## CONCLUSION

For these reasons Mr. Pleitez respectfully requests that this Court vacate his sentence and remand for resentencing.

Respectfully submitted,


 /S/ Edward Mallett
EDWARD MALLETT
4306 Yoakum Blvd., Suite 400
Houston, TX 77006
713-236-1900
edward@mgscounsel.com

<u>CERTIFICATE OF SERVICE</u>

I, EDWARD MALLETT, certify that today, January 12, 2017 a copy of the

brief for appellant and a copy of the record excerpts were served upon Assistant

United States Attorney Renata A. Gowie, by electronic case filing.


 /S/   Edward Mallett

EDWARD MALLETT

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 5,191 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3.    This brief complies with 5TH CIR. R. 31.1 because it has been converted into Portable Document File (PDF) format.


/S/   Edward Mallett
EDWARD MALLETT